IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MURJ, INC., | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:21-CV-02778-PX |
| v. | * | |
| | * | |
| RHYTHM MANAGEMENT GROUP, LLC *et. al.*, | * | |
| | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Pending in this patent infringement action is the motion to dismiss (ECF No. 22) filed by Defendants Rhythm Management Group, LLC, and Rhythm Management Group, Corp. (collectively, "Rhythm" or "Defendants"). The issues are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court GRANTS Rhythm's motion to dismiss.

**I.      Background**

    **A.  Murj and the '989 Patent**

Murj is a corporation that provides digital healthcare support services for physicians and other clinicians. ECF No. 1 ¶ 8. Central to this case is Murj's creation of a "data management software" that streamlines electronic information collected from patients' implantable cardiac devices. *Id.* An implantable cardiac device, such as a pacemaker or cardioverter defibrillator, is surgically inserted in the patient to regulate cardiac function. *Id.* ¶ 15. The devices routinely collect and transmit "diagnostic and other critical information" to clinicians. *Id.* However, each device manufacturer uses different software and data formats to gather and transmit the electronic information. *See id.* ¶ 16. Accordingly, when patients use different devices, the

clinician must employ a separate software platform to receive and analyze information transmitted for each device.

The problem that Murj sought to rectify, therefore, was to create a software platform that could "analyze all information relating to all patients in one program, in a unified format[.]" ECF No. 1 ¶ 16.  Murj developed its eponymous "Murj Platform," described as a cohesive "data management software program" that integrates data "from hundreds of different implantable cardiac devices manufactured by numerous different companies."  ECF No. 1 ¶¶ 8–9.  On April 23, 2019, the United States Patent and Trademark Office granted Murj's patent application and simultaneously issued Patent No. 10,268,989 (the "'989 Patent") related to the Platform.  *See* ECF No. 1 ¶¶ 1, 11–13.  Of the 21 claims set forth in the '989 Patent, two are particularly relevant here.

> Claim 1 asserts ownership of a "medical device data platform" comprising:
>
> at least one integration device accessing information originating from a plurality of implantable medical devices, the plurality of implantable medical devices being manufactured by a plurality of manufacturers and implanted in a plurality of patients, the at least one integration device accessing the information according to a data format and one or more associated communications protocols specific to each of the plurality of manufacturers, the at least one integration device converting the information from the respective data formats into a unified format; a core cloud having at least one processor, the core cloud processing the information in the unified format to generate provider-oriented information for the plurality of implantable medical devices; and a provider portal accessible with at least one communication device, the provider portal providing a portion of the provider-oriented information corresponding to a subset of the plurality of implantable medical devices, the subset of the plurality of implantable medical devices being for a group of the plurality of patients associated with at least one care provider, the portion of the provider-oriented information including care provider analytics for the at least one care provider.

ECF No. 1-1 at p. 14, 11:43–67.

Claim 14 asserts ownership of a "method," for,

accessing information originating from a plurality of implantable medical devices using at least one integration device, the plurality of implantable medical devices being manufactured by a plurality of manufacturers and implanted in a plurality of patients, the information being accessed according to a data format and one or more associated communications protocols specific to each of the plurality of manufacturers; converting the information from each of the data formats into a unified format using the at least one integration device; generating provider-oriented information for the plurality of implantable medical devices by processing the information the unified format using at least one processor of a core cloud; providing a portion of the provider-oriented information with a provider portal accessible with at least one communication device, the portion of the provider-oriented information corresponding to a subset of the plurality of implantable medical devices for a group of the plurality of patients associated with at least one care provider, the portion of the provider-oriented information including care provider analytics for the at least one care provider.

*Id.* at p.14–15, 12:50–13:1–6.

### B. Rhythm and the Alleged Infringement of the '989 Patent

Like Murj, Rhythm provides similar integration software services to healthcare practitioners. *See* ECF No. 1 ¶ 30. In connection with these services, Rhythm originally purchased licensing rights to use the Murj Platform with Rhythm customers. ECF No. 1 ¶¶ 31 & 32. However, in short order, Rhythm developed its own platform which it currently advertises and sells in direct competition with the Murj Platform. *See* ECF No. 1 ¶ 34.

Murj avers that the Rhythm software infringes on the '989 Patent, particularly Patent Claims 1 and 14.[1] In response, Rhythm moves to dismiss the infringement action, contending that the '989 Patent covers an unpatentable "abstract idea," and thus the infringement allegation

---

[1] Of the 21 "claims," identified in the '989 Patent as the subject areas which the "inventor . . . regards as the invention," *see* 35 U.S.C. § 112(b), Murj alleges that Rhythm has infringed claims 1–3, 5–14, and 16–21. *See* ECF No. 1 ¶ 38; *see also* ECF No. 1-1 at 14–15. However, the parties do not dispute that Claims 2–3 and 5–13 depend on Claim 1, and Claims 16–21 depend on Claim 14. *See* ECF Nos. 22-1 at 9 n.2, 10 n.3; *see also* ECF No. 1 ¶14; *see generally* ECF No. 26 (not contesting Defendants' portrayal of dependent claims). The parties also focus exclusively on Claims 1 and 14, and so the Court, too, will confine its analysis to whether Claims 1 and 14 describe material subject to patent protection. *See Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1016 (N.D. Cal. 2017) ("[T]he Court need not individually analyze every claim if certain claims are representative.").

must fail as a matter of law.  *See* ECF No. 22.  For the reasons discussed below, the Court agrees with Rhythm.

## II.     Standard of Review

When ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  A complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal citation omitted).  "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Courts may "consider documents attached to the complaint" provided the documents are "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ("An integral document is a document that by its very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.") (internal quotations and citation omitted) (emphasis in original).  Rhythm does not contest the authenticity of the '989 Patent, *see generally* ECF No. 22-1, and so the Court considers it as integral to the infringement claim.  *See* ECF No. 1-1 ('989 Patent).

**III.     Analysis**

Rhythm contends that the '989 Patent, Claims 1 and 14, cover "abstract ideas" and thus fall outside the subject matter eligible to be patented pursuant to 35 U.S.C. § 101.  ECF No. 22-1 at 13–14.  35 U.S.C. § 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof[.]"  35 U.S.C. § 101.  The Supreme Court of the United States has established three well recognized exceptions to patentable material:  (1) laws of nature; (2) natural phenomena; or (3) abstract ideas.  *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016); *Burnett v. Panasonic Corp. of N. Am.*, No. PX-17-00236, 2017 WL 4947013, at *4 (D. Md. Nov. 1, 2017), *aff'd sub nom. Burnett v. Panasonic Corp.*, 741 F. App'x 777 (Fed. Cir. 2018).  The rationale for these exceptions is that  "the basic tools of scientific and technological work" should not become the intellectual property of any one inventor—they must be available to all.  *See Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).

To ascertain whether claimed material is patentable, the Supreme Court, in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 72 (2012), and *Alice Corporation v. CLS Bank International*, 573 U.S. 208, 217 (2014), devised a two-step inquiry. First, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts."  *Alice*, 573 U.S. at 217.  If yes, the Court in step two must evaluate whether the claim elements, either individually or as an ordered combination, cover an "inventive concept" that "'transform[s] the nature of the claim' into a patent-eligible application."  *Id.* (quoting *Mayo*, 566 U.S. at 72, 78).

Importantly, once a patent has issued, it is presumed valid. 35 U.S.C. § 282. In that circumstance, the movant must demonstrate by clear and convincing evidence that the covered material is unpatentable. *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F. Supp. 3d 688, 706–07 (E.D. Va. 2015) (citing *Nystrom v. TREX Co.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005)); *Carfax, Inc. v. Red Mountain Techs.*, 119 F. Supp. 3d 404, 411 (E.D. Va. 2015). That said, "[p]atent eligibility under § 101 presents an issue of law," *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340 (Fed. Cir. 2013), and may be resolved on a motion to dismiss when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see also, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (affirming determination of ineligibility made on 12(b)(6) motion); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014) (same). The Court applies the law of the Federal Circuit in making its determination of patent eligibility. *See Deprenyl Animal Health, Inc. v. Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002) (quoting *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365–66 (Fed. Cir. 2001)) (noting Federal Circuit law applies "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'").

### A. *Alice* Step One

Rhythm argues the '989 Patent fails the first *Alice* step because Claims 1 and 14 are directed to multiple abstract ideas. ECF No. 22-1 at 13. "The Supreme Court's formulation makes clear that the first-stage filter is a meaningful one, sometimes ending the § 101 inquiry." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Not every claim

that recites tangible components escapes the reach of the abstract idea exception. *See e.g., Alice*, 573 U.S. at 226 (claims that recite general-purpose computer components are nevertheless "directed to" an abstract idea); *Content Extraction*, 776 F.3d at 1347 (claims reciting a "scanner" are directed to an abstract idea); *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and a "database" are nevertheless directed to an abstract idea). In assessing whether claims constitute patent-ineligible abstract ideas, the Court must avoid oversimplifying the challenged claims because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 216 (quoting *Mayo*, 566 U.S. at 71); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("The 'directed to' inquiry, therefore, cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon.") (emphasis in original).

The plain language of Claims 1 and 14, along with the patent specification, seek protection for both a "device" and a related "process." Claim 1 describes "at least one integration device" that converts data from multiple formats "into a unified format"; and that uses at least one "core cloud," having at least "one processor," and a "provider portal" accessible with at least one "communication device" sufficient to receive the integrated data. ECF No. 1-1 at p.14, 11:44–67. As to the "method," Claim 14 describes "accessing information originating from a plurality of implantable medical devices using at least one integration device," next "converting the information from each of the data formats into a unified format using the at least one integration device"; and last "providing a portion of the provider-oriented information with a provider portal accessible" to at least one care provider. ECF No. 1-1 at p.14, 12:49–67.

7

When reading the Patent claims most favorably to Murj, the '989 Patent describes the "device" in the most general of terms: it is merely one which collects, converts, and displays electronic data in a centralized location. *See* ECF No. 1-1 at p. 14, 11:44–67; 12:49–67. Nowhere does the '989 Patent, or any other Complaint facts, detail what particular innovation performs any specific functions. *See, e.g., Elec. Power*, 830 F.3d at 1353 (rejecting claim as abstract when "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools."). Accordingly, the claimed device amounts to no more than the "abstract idea" of synthesizing data from multiple formats into one. *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known."); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (rejecting as abstract claim that "recites a process of taking two data sets and combining them into a single data set . . . generated by taking existing information . . . and organizing this information into a new form.").

Similarly, the claimed "method," covers in the most general sense "accessing" and "converting" information into a "unified format" and then "generating" the information to display in a provider-friendly portal. ECF No. 1-1 at p. 14, 12:50–67. But "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Elec. Power*, 830 F.3d at 1354 (citing *Content Extraction*, 776 F.3d at 1347); *see EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 970 (Fed. Cir. 2017) (rejecting as abstract claims to "a message publishing system that accepts messages in multiple ways, such as by fax, telephone, or email, verifies the message was sent by an authorized sender, and converts and publishes the message on the Internet," requiring format change); *Adaptive Streaming, Inc.*

*v. Netflix*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (rejecting format conversion as abstract idea when "[t]he focus is not any specific advance in coding or other technique for implementing [the] idea").  Nothing in the '989 Patent or the other Complaint facts explains *how* such process is accomplished.  *Cf. McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314–15 (Fed. Cir. 2016) (finding claims not abstract when they "focused on a specific asserted improvement in computer animation").  With no explanation of a novel technique or improvement to an existing technique, the Court readily concludes that the '989 Patent is directed to an abstract concept.

      Murj's arguments to the contrary are not convincing.  In Murj's own words, the claimed invention "(1) enables practice-wide information and analytics; (2) provides information for all patients through one provider portal; (3) allows patients to access this information from the convenience of their home; and (4) [] provides specific advances in the functionality of prior medical device data platforms."  ECF No. 26 at 19.  This is simply a rehashing of the generalities claimed in the '989 Patent, but without any specifics as to how such improvements are achieved.  Because the idea of collecting and consolidating information remains fundamental to technological innovation, it is not subject to patent protection.[2]  It is the substance of that idea—not the idea itself—that receives patent protection.  Murj has not provided that substance.

      Murj next emphasizes that the Complaint describes the patent claims with sufficient detail to defeat the abstract idea exception.  The Complaint puts no such meat on the bones.  Read most favorably to Murj, it describes the patentable material as "a new and improved

---

[2] The prosecution history demonstrates as much.  *See* ECF No. 26-1 at 7–12 (explaining two prior art patent applications that disclose features of the '989 Patent such as remote monitoring of implantable devices, that is transmitted in various forms, and displayed via a portal to a provider or patient); *see also, e.g., CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372–73 (Fed. Cir. 2020) ("In determining what the claims are directed to and whether they are directed to an abstract idea, a court may well consult the plain claim language, written description, and prosecution history[.]").

medical device data platform that overcomes all of the burdens associated with the existing systems" and that the device performs its functions in "novel, innovative, and non-conventional ways[,]" ECF Nos. 1 ¶¶ 26 & 27; 26 at 23, and that the invention generally "represent[s] specific improvements over the prior art." ECF Nos. 1 ¶ 28; 26 at 23.  But once again, the averments are devoid of any facts to make plausible *how* the invention accomplishes the improvements.  Murj must offer more than conclusory language untethered from specific facts in the Complaint as to the invention's non-abstract direction.  *See, e.g.*, *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019) (the court is "not required to accept the asserted legal conclusions" in a plaintiff's complaint when assessing a motion to dismiss).

Lastly on this point, Murj presses that the Court must first hold a claim construction hearing before it can conclude the abstract idea exception applies.  *See* ECF No. 26 at 27.  Murj, however, does not explain at all how a claim construction proceeding would change the analysis.  *See Cleveland Clinic Found. v. True Health Diagnostics, LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.").  If the patent claims cannot be construed to defeat the abstract idea exception, and the plaintiff offers no meaningful way in which a claim construction analysis will change that result, it is entirely proper to dismiss the action in the first instance.  Thus, under *Alice* step one, and viewing the Complaint facts most favorably to Murj, the Patent covers no more than an unpatentable abstract idea.  The Court proceeds to *Alice* step two.

### B. *Alice* Step Two

Where, as here, the patent covers an abstract idea, it does not necessarily "render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346

(Fed. Cir. 2015). In *Alice* step two, the Court must consider "whether the remaining elements . . . are sufficient to transform the nature of the claim into a patent-eligible application." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (internal quotations and citation omitted). To do so, the Court examines "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 73, 79). Thus, for a claim to survive challenge it "must include additional features" to ensure that the claimed invention accomplishes more than just describing "well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715–16 (Fed. Cir. 2014) (internal citations and quotations omitted). Claims that "do not require an arguably inventive set of components or methods," or "a new source or type of information, or new techniques for analyzing it" will not pass *Alice* step 2. *Elec. Power*, 830 F.3d at 1355; *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (cautioning that Federal Circuit law does not teach that "any allegation about inventiveness, wholly divorced from the claims or the specification" is enough to survive a motion to dismiss).

On this point, Murj emphasizes once again that the '989 Patent covers a device and method that allow the user to "analyze all information relating to all patients in one program, in a unified format, with aggregated provider-oriented information," ECF Nos. 1 ¶ 16; 26 at 28, and that the invention creates an "automated process of obtaining diagnostic information"; "reduce[s] the need for in-clinic information technology specialists"; "provide[s] analytics, device recall management, billing code generation, and other advanced features"; and can "correlate or associate accurately the information associated with one or more of the implantable medical devices." ECF No. 1 ¶¶ 16, 20, 23, 24. The Complaint further asserts that "[t]he inventiveness

11

of the claimed invention is reflected in the commercial success Murj has achieved by implementing it." ECF No. 1 ¶ 29.  Murj, in short, contends that the "application" and "combination" of the individual components is unique and inventive, sufficient to survive dismissal.  *See* ECF No. 26 at 30.

The Court disagrees.  True, "[a]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *BASCOM Global Internet Servs., Inc. v. AT&T Mobility*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  But the combination of known elements must describe with some specificity how the invention improves an aspect of the industry.  *Cf. id.* (finding inventive concept when the "patent describes how its particular arrangement of elements is a technical improvement" where "prior art filters were either susceptible to hacking and dependent on local hardware and software, or confined to an inflexible one-size-fits-all scheme.").  The claimed invention, simply put, must do more than direct the practitioner to generically "implement the abstract idea with routine, conventional activity."  *See, e.g.*, *Ultramercial*, 772 F.3d at 715.

The '989 Patent language is comprised of little more than generalized descriptions of existing and known computer components such as "integration servers," "information processors," and a "core cloud" used to synthesize electronically received information.  And even though Murj avers generally that it uses an "inventive" concept,  neither the Patent nor any averred facts give any specifics as to how such "inventions" are accomplished.  *See generally* ECF Nos. 1; 1-1.  Broad, results-oriented language alone cannot pass *Alice* step two.  *See Elec. Power*, 830 F.3d at 1355 (finding patent failed *Alice* step 2 when the claims did not "require a new source or type of information, or new techniques for analyzing it."); *Two Way Media Ltd. v. Comcast Cable Comm.*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (rejecting appellant's argument

that claim arranged components in nonconventional way when "no inventive concept resides in the claims"); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1012 (Fed. Cir. 2018) (finding claim failed to state inventive concept when it "merely recit[ed] the method of implementing the abstract idea itself); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (no inventive concept when claims recited "only generic computer components" and the "abstract idea of delivering targeted advertising" without additional inventive component).

In sum, the '989 Patent fails the two-step *Alice* inquiry. Accordingly, the Court is constrained to conclude that, even when viewed in the light most favorable to Murj, nothing in the Complaint makes plausible that Murj has sought protection for patentable material pursuant to 35 U.S.C. § 101. This deficiency defeats the infringement claim, and the Complaint must be dismissed.

### IV.     Dismissal Without Prejudice

The Court recognizes that Murj has not sought to amend the Complaint, even after Rhythm squarely challenged the '989 Patent's validity. Nor can the Court readily discern how Murj could cure the defects of the claim. But out of an abundance of caution, the Court will dismiss the Complaint without prejudice. Murj will be granted **fourteen days** from the date of this Opinion and Order to seek leave to file an Amended Complaint to cure the identified deficiencies, if possible. If Murj does not seek such leave, the Court will dismiss the action with prejudice and close the case. If Murj seeks such leave, Rhythm shall have fourteen days to respond. A separate order follows.

  8/17/2022                                                         /S/
Date                                                        Paula Xinis
                                                            United States District Judge